# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

WILLIE JAMES BELL,

    Petitioner,

v.                                     CASE NO: 8:09-CV-871-T-30TBM

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.
_____/

## ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. 1). The Court has considered the petition, Respondent's response (Dkt. 13) and Petitioner's reply (Dkt. 17). Upon review, the Court determines that the petition must be denied because Petitioner has failed to meet his burden to show ineffective assistance of counsel.

## BACKGROUND

**Procedural background**

On July 29, 2004, Petitioner Willie James Bell (hereinafter "Petitioner") was indicted on one count of robbery with a firearm, and one count of possession of a firearm by a convicted felon. The firearm possession count was eventually nolle prossed. On August 5, 2005, a Polk County jury found Petitioner guilty of robbery with a firearm, but found that he

did not actually carry a firearm during the commission of the robbery. Petitioner was sentenced to life in prison on November 8, 2005.

The Second District Court of Appeal upheld Petitioner's conviction per curiam on January 24, 2007, *Bell v. State*, 950 So. 2d 1241 (Fla. 2d DCA 2007), and denied Petitioner's motion for rehearing on March 12, 2007.

Petitioner filed a pro se motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 on October 15, 2007. The trial court denied the motion on March 24, 2008. The Court of Appeal upheld the trial court per curiam on January 16, 2009. *Bell v. State*, 6 So. 3d 62 (Fla. 2d DCA 2009). The mandate issued on April 29, 2009.

**Factual background**

In the early hours of July 5, 2004, Lake Wales resident Calvin Banks (hereinafter "Banks") drove to the Birdbath Car Wash, the business he owned in Lake Wales, to check on the building's office door to ensure that it was locked.

When Banks arrived, he discovered the door was sightly open. He retrieved tools from the trunk of his car and left the motor running while he worked on the door. A large white passenger van soon pulled up behind him and a woman called from the vehicle asking Banks if he was okay. He responded that he was fine and expected the van to leave. But Banks, who had his back to the van, heard one of the van doors open. He slowly turned around and saw a man, later identified as James Johnson (hereinafter "Johnson"), approach pointing a gun. Johnson told Banks to hand over everything he had. Banks turned over some jewelry, his cell phone and about $80 in cash.

Banks then saw a man with dreadlocks, whom he later identified as Petitioner, get out of the van. Banks said he recognized Petitioner because he had seen him around Lake Wales. Petitioner got into Banks' car and rummaged through the glove compartment. Banks heard Petitioner tell Johnson to shoot Banks. Petitioner and Johnson then drove off in Banks' car, and a person driving the van also pulled away.

Immediately after Banks' car and the van left, a couple that Banks knew pulled up and asked if he was okay. Banks told the couple he had been robbed. He got into the couple's car and the three of them began chasing after the two vehicles. While following the vehicles north on Route 27 to nearby Dundee, Petitioner borrowed the couple's cell phone to call 911 and gave the dispatcher the vehicles' locations. Polk County Sheriff's Department deputies began following the suspects, but soon lost sight of them. At that point, Banks and the deputies pulled over and he gave a statement describing the robbery.

Eventually, deputies located and stopped the van at the side of a nearby highway. They detained Petitioner, Shequila Standiford (hereinafter "Standiford") and Lanjonia McBride (hereinafter "McBride") who had all exited the van before Johnson sped off in the van. Deputies recovered a handgun where they had ordered Petitioner to lie on the ground.

Other deputies continued to chase Johnson in the van. He eventually abandoned the van and fled on foot to a nearby lake where deputies later apprehended him.

A few hours later, deputies located Banks' car abandoned on the side of Executive Road in nearby Winter Haven. Some of the vehicle's tires were flat, and it was stuck in the sand.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. §2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. §2254(d) governs the review of those claims. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001); *see also Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

   1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003).

4

# DISCUSSION

## Legal standard for ineffective assistance of counsel

Petitioner raises four grounds for relief, all of which involve claims of ineffective assistance of counsel. The standard for proving ineffective assistance of counsel sets a high bar for a petitioner to overcome. The two-prong test spelled out in *Strickland v. Washington*, 466 U.S. 668 (1984), requires a petitioner to show both that (1) counsel's performance was so deficient and he made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and (2) counsel's substandard performance prejudiced the defendant. *Id*. at 687. Counsel's performance is not inadequate unless he did not act as "a reasonably competent attorney." *Id*. (internal quotation marks omitted).

The deferential standard of the first prong carries the strong presumption that counsel's performance fell "within the wide range of reasonable professional assistance" and that counsel's actions were "sound trial strategy." *Id*. at 689. Accordingly, a defendant claiming ineffective assistance of counsel must identify acts or omissions that were not the result of reasonable professional judgment, and a court must consider whether those acts were outside "the wide range of professionally competent assistance." *Id*. at 690.

The prejudice prong requires a defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

## Ground 1

In support of his petition, Petitioner asserts:

> Ineffective assistance of counsel as guaranteed by the 6th and 14th Amendment of the U.S. Constitution wherein counsel failed to contemporaneous [sic] object to improper jury instruction on the defendant's 5th Amendment [sic] not testify.

Petitioner argues that his counsel should have objected when the trial court judge made a misstatement of law while reading jury instructions at the close of testimony:

"The Defendant entered a plea of not guilty. This means you must presume or believe the Defendant is innocent. The presumption stays with the Defendant as to each material allegation in the Information, through each stage of the trial..." (Dkt. 14, Ex. 1, Vol. III, at R. 315).

...

"The Defendant is not required to present evidence or prove anything." (Dkt. 14, Ex. 1, Vol. III, at R. 315).

...

"The Constitution requires the State to prove its accusations against the Defendant. It is not necessary for the Defendant to disprove anything nor is the Defendant required to prove his innocence. It is up to the State to prove the Defendant's guilt by evidence. The Defendant exercised a fundamental right by choosing not to be a witness in this case. **You must view this as an admission of guilt** nor be influenced in any way by his decision. No juror should ever be concerned that the Defendant did or did not take [sic] witness stand to give testimony in the case." (Dkt. 14, Ex. 1, Vol. III, at R. 317-18) (emphasis added).

If a judge gives an incorrect oral jury instruction, the error is viewed within the context of the entire proceeding when determining if the error misled the jury. *Waters v.*

*Thomas*, 46 F.3d 1506, 1524 (11th Cir. 1995). When evaluating an incorrect instruction, a court can consider the rest of the oral instructions and the written instructions given to the jury. *United States v. Hansen*, 262 F.3d 1217, 1249-50 (11th Cir. 2001). An incorrect phrase that is immediately preceded and followed by a correct instruction can be sufficient to find that an incorrect oral jury instruction did not mislead the jury. *Id.*

In this case, this Court agrees with the trial court's opinion rejecting Petitioner's 3.850 motion where it ruled that, when looking at the instructions in the totality, they accurately informed jury members not to take into account Petitioner's decision not to testify. Also, the jury received accurate written instructions (Dkt. 14, Tab 11). Because Defendant's counsel's objection would have been without merit, counsel cannot be deemed ineffective for failure to raise it, nor could Petitioner have been prejudiced.

Furthermore, Petitioner has failed to show that the outcome would have been different if it had not been for the faulty oral instruction. The prosecution produced credible evidence that could have served as a basis for a jury to convict Petitioner. The jury heard Banks' testimony that when Johnson was holding him at gunpoint, he saw Petitioner rummage through his car and heard him instruct Johnson to shoot Banks (Dkt. 14, Ex. 1, at R. 12-14). Banks recognized Petitioner because he had seen him around town. The jury also heard a recording of Banks' 911 call where he told the dispatcher that there were two black men driving away in his car (Dkt. 14, Ex. 1, at R. 29). Therefore, Petitioner has failed to carry his burden to prove prejudice.

For these reasons, Petitioner is not entitled to relief on this Ground.

**Ground 2**

In support of his petition, Petitioner asserts:

> Ineffective assistance of counsel as guaranteed by the 6th and 14th Amendment of the U.S. Constitution wherein Counsel failed to move to suppress statements made after given inadequate Miranda warning in violation of the 5th Amendment.

Petitioner argues that the *Miranda* warning he received was inadequate because it only informed him of his right to have an attorney present *prior to* police questioning and did not explicitly inform of his right to have an attorney present *during* police questioning.

The recorded statement that Defendant gave included the *Miranda* warning issued by Detective Edwin Moran (hereinafter "Moran") of the Polk County Sheriff's Office:

Moran: ... Mr. Bell you have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney present prior to our questioning. If you cannot afford to hire an attorney, one will be appointed to represent you by the court. You can decide at any time to not answer any questions or make any statements. Do you understand.

Petitioner: Yes, sir.

Moran: Okay. Having these rights in mind, do you wish to talk to me.

Petitioner: Yes, sir.

(Dkt. 14, Ex. 1, Vol. II, at R. 167-69).

The Supreme Court of the United States has not yet determined whether police must explicitly inform a defendant of the right to have counsel present during custodial interrogation in order to comply with *Miranda v. Arizona*, 384 U.S. 436 (1966). Federal

appellate courts are split on the issue.[1] In June 2009, the Supreme Court granted certiorari on a case raising this issue. *State v. Powell*, 998 So. 2d 531 (Fla. 2008), *cert. granted*, (U.S. June 22, 2009), 77 U.S.L.W. 3559 (No. 08-1175).

The Florida Supreme Court ruled in 2008 that a *Miranda* warning is deficient if it does not explicitly inform a defendant of the right to counsel during a police interrogation. *Powell*, 998 So. 2d at 542. This rule had not been articulated at the time of Petitioner's 2004 arrest or 2005 conviction, and his counsel's failure to anticipate a change in the law does not constitute ineffective assistance of counsel. *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001).

Furthermore, Petitioner fails to meet the prejudice prong. As discussed *supra*, there was credible eyewitness testimony that could have reasonably provided grounds for the jury to convict Petitioner that was independent of Petitioner's recorded statements. It is merely speculative that there would have been a different result if the statement had been excluded. Additionally, this Court notes that in Petitioner's recorded statement he asserts that he was not involved in robbing Banks. In the recording, he told police that he never got out of the van during the robbery, and never drove off in Banks' car (Dkt. 14, Ex. 1, Vol. II, at R. 167-76).

For these reasons, Petitioner is not entitled to relief on this Ground.

---

[1] The Sixth and Ninth Circuits have held that the explicit warning must be given. *United States v. Tillman*, 963 F.2d 137 (6th Cir. 1992); *United States v. Noti*, 731 F.2d 610, 615 (9th Cir. 1984). The Second, Fourth, Seventh and Eighth Circuits have held it is not required. *United States v. Lamia*, 429 F.2d 373 (2d Cir. 1970); *United States v. Frankson*, 83 F.3d 79 (4th Cir. 1996); *State v. Adams*, 484 F.2d 357 (7th Cir. 1973); *United States v. Caldwell*, 954 F.2d 496 (8th Cir. 1992).

**Ground 3**

In support of his petition, Petitioner asserts:

> Ineffective assistance of counsel as guaranteed by the 6th and 14th Amendment of the U.S. Constitution wherein trial Counsel failed to move to suppress a firearm with no relative linkage to the defense charge.

Petitioner argues that his counsel rendered ineffective assistance because counsel did not make a motion to suppress evidence of a .25 automatic firearm found near him when he was apprehended by police. Petitioner states that he was never in possession of this or any other firearm.

The trial transcript does not support Petitioner's assertions. Not only did Petitioner's counsel argue a motion in limine to exclude evidence of the gun (Dkt. 14, Ex. 1, Vol. I supplement), she also renewed her objection at trial to the gun being introduced (Dkt. 14, Ex. 1, Vol. II, at R. 106). Because the record shows that Petitioner's counsel took the actions he alleges she failed to take, Petitioner is not entitled to relief on this Ground.

**Ground 4**

In support of his petition, Petitioner asserts:

> Ineffective assistance of counsel as guaranteed by the 6th and 14th Amendment of the U.S. Constitution wherein Counsel failed to call exculpatory witness.

Petitioner argues that his counsel was ineffective for failing to call Standiford, Johnson's girlfriend, as a defense witness. Petitioner asserts that Standiford would have testified that Petitioner "neither had any conscious knowledge of the occurrence of the robbery nor any plan to rob anyone." Petitioner states that his counsel should not have called

McBride, Petitioner's cousin, to testify because the prosecutor could attack her credibility because of her relationship with Petitioner. He argues that Standiford's testimony "would have carried substantial" weight because she did not have a close relationship with Petitioner. In his reply, Petitioner also asserts that his counsel should have called Standiford as a witness because she had "never made any prior statements and could not have been impeached" whereas McBride had made prior statements that were used to impeach her testimony.

On direct examination by defense counsel, McBride testified that while Johnson was holding Banks at gunpoint, Petitioner was in the back of the van where he had fallen asleep after a night of drinking (Dkt. 14, Ex. 1, Vol. II, at R. 191). She testified that she eventually woke Petitioner who saw that Johnson was holding Banks at gunpoint and expressed concern about what was going on by saying "[n]o, no, man, those are good people." (Dkt. 14, Ex. 1, Vol. II, at R. 195). On cross-examination, the prosecution elicited testimony that McBride gave a prior statement to Moran that after Petitioner woke, he got out of the van and got into Banks' car as Johnson drove away with it (Dkt. 14, Ex. 1, Vol. III, at R. 224-25). The statement to Moran did not indicate that Petitioner had rummaged through Banks' car or instructed Johnson to shoot Banks. McBride testified that Moran coerced her to make the prior statement that Petitioner got into Banks' car with Johnson. (Dkt. 14, Ex. 1, Vol. III, at R. 218-19).

Petitioner has not shown that calling McBride instead of Standiford fell outside the wide range of acceptable counsel. Because Standiford was charged in connection with the robbery, it is likely that the prosecution would have impeached her credibility by raising

11

questions about her incentives to testify truthfully in the case. Further, Petitioner has not shown that Standiford was available to testify. Since, she was also charged in the robbery, she had a Fifth Amendment right not to testify. Petitioner has not shown she was willing to waive this right.

Petitioner has also failed to show that the jury would have reached a different result had Standiford testified instead of McBride. His assertion that there would have been a different result if Standiford had testified instead of McBride is purely speculative. Additionally, as discussed *supra* the prosecution presented credible eyewitness testimony from Banks that Petitioner participated in the robbery.

For these reasons, Petitioner is not entitled to relief on this Ground.

It is therefore ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. 1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on February 9, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2009\09-cv-871.deny 2254.wpd*